**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-258-DJH-CHL**

**ANGELICA NASH,**                                                                                           **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                               **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint (DN 1) of Plaintiff, Angelica Nash ("Nash"). In her Complaint, Nash seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g) (2017). Nash filed a Fact and Law Summary. (DN 13.) The Commissioner also filed a Fact and Law Summary. (DN 20.) Therefore, this matter is ripe for review.

This matter was referred to the undersigned for the preparation of a report and recommendation. (DN 11; General Order 2014-17.) For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.    FINDINGS OF FACT**

Nash protectively filed an application for child's insurance benefits based on disability, an application for disability insurance benefits, and an application for supplemental security income ("SSI") on March 20, 2015. (DN 9-5, at PageID # 334-53.) On June 20, 2017, Administrative Law Judge Candace A. McDaniel (the "ALJ") conducted a hearing on Nash's application. (DN 9-2, at PageID # 82-124.) In a decision dated September 13, 2017, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (DN 9-2, at PageID # 57-74.) In doing so, the ALJ made these findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020. (*Id.* at 63.)

2. Born on July 10, 1991, the claimant had not attained age 22 as of April 13, 2013, the amended alleged onset date. (*Id.*)

3. The claimant has not engaged in substantial gainful activity since April 13, 2013, the amended alleged onset date. (*Id.*)

4. The claimant has the following severe impairments: status/post right hip open reduction and internal fixation, morbid obesity, depression, anxiety, history of attention deficit disorder (ADD), and mild intellectual disability. (*Id.*)

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 64.)

6. [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she could never climb ladders, ropes, scaffolds, or stairs; she could occasionally stoop, crawl, crouch, kneel, and climb ramps; she could perform simple tasks that do not require calculations; she could interact appropriately with supervisors and coworkers but should not interact with the public; she should not be in a work environment with strict production quotas or fast assembly line type work; she could maintain attention and concentration for two-hour segments throughout an eight-hour workday; and she could tolerate routine changes within this setting. (*Id.* at 67.)

7. At all times relevant to t[he ALJ's] decision, the claimant has been unable to perform any past relevant work. (*Id.* at 72.)

8. The claimant was born on July 10, 1991 and was 21 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date. (*Id.* at 73.)

9. The claimant has at least a high school education and is able to communicate in English. (*Id.*)

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2013, through the date of this decision. (*Id.* at 74.).

Nash requested an appeal to the Appeals Council (DN 9-4, at PageID # 317), which denied her request for review on February 28, 2018 (DN 9-2, at PageID # 39-41). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Nash is presumed to have received that decision five days later, on March 5, 2018. 20 C.F.R. § 422.210(c). Accordingly, Nash timely filed this action on April 24, 2018. *See* 42 U.S.C. § 405(g).

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities. *See* 42 U.S.C. § 401 – 434, 1381-1383f (2017). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2018).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's

3

decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

      **B.**    **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2018). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. §§ 404.1509, 416.909 (2018).

4

    (5)      Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

    **C.**    **Plaintiff's Contentions**

Nash contested the ALJ's Finding Nos. 5 and 6, as well as the ALJ's decision not to reopen Nash's prior applications. (DN 13.) The undersigned will address Nash's arguments below.

            **1.**    **Decision Not to Reopen Prior Applications**

Nash argued that the ALJ's decision not to reopen her prior applications for benefits dated June 30, 2002 and August 15, 2014, which were denied at the initial level without further appeal, was improper. (DN 13, at PageID # 1184.) In her decision, the ALJ found no basis for reopening the previous decisions under 20 C.F.R. §§ 404.988, 416.1488. (DN 9-2, at PageID # 60.) Nash characterized the ALJ's determination as an "error of law" but did not provide any authority to support her position. (DN 13, at PageID # 1184.) Instead, she argued that "when considered in context of the [ALJ's] entire decision," the error "detract[ed] from a conclusion that substantial evidence support[ed] the decision." (*Id.*)

As noted by the Commissioner, the ALJ's decision not to reopen Nash's prior applications is generally not reviewable by this Court. (DN 20, at PageID # 1210.) 20 C.F.R. § 404.903(l) provides, "Administrative actions that are not initial determinations . . . are not subject to judicial

5

review. These actions include, but are not limited to, an action . . . (l) [d]enying your request to reopen a determination or a decision." 20 C.F.R. § 404.903(l) (2018). The Supreme Court has held that a decision by the Social Security Administration ("SSA") not to reopen a prior application, which can be made without a hearing, is not a "final decision . . .made after a hearing" within the meaning of 42 U.S.C. § 405(g) that grants the Court jurisdiction to review the SSA's decision. *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *see also Glazer v . Comm'r of Soc. Sec.*, 92 Fed. App'x 312, 314 (6th Cir. 2004) (citing *Califano*, 430 U.S. at 107-08) ("The [Supreme] Court held that [42 U.S.C. § 405(g)] could not be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits."). The only exception to this rule is where a plaintiff has established a colorable constitutional claim. *Califano*, 430 U.S. at 109; *Cottrell v. Sullivan*, 987 F.2d 342, 345 (6th Cir. 1992). Nash has made no such constitutional argument in the present case. Accordingly, the undersigned finds that Nash's argument regarding the ALJ's decision not to reopen her prior claim for benefits is not subject to judicial review and, therefore, does not provide grounds to reverse the ALJ's decision.

### 2. Listing 12.05

Nash argued that the ALJ erred in failing to conclude that she met the requirements for Listing 12.05. At Step Three of the five-step evaluation process, an ALJ considers whether the claimant has an impairment that meets the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520, 416.920. "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). The claimant bears the burden of proving her impairment satisfies all of the specified criteria in a given listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ specifically addressed whether Nash's impairments met Listing 12.05.  (DN 9-2, at PageID # 64-67.)  Listing 12.05 requires a claimant to demonstrate either all of the Paragraph A criteria or all of the Paragraph B criteria.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05 (2017). Nash appears to challenge only the ALJ's conclusion that she did not meet the Paragraph B criteria, which are as follows:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>    a. Understand, remember, or apply information (see 12.00E1); or
>    b. Interact with others (see 12.00E2); or
>    c. Concentrate, persist, or maintain pace (see 12.00E3); or
>    d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.*

As to the Paragraph B(2) criteria, the ALJ found that Nash had only mild or moderate limitations with respect to the listed categories.  (DN 9-2, at PageID # 64-65.)  Nash argued that she had at least a marked or extreme limitation with respect to her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace.  (DN 13, at PageID # 1185-86.) The ALJ concluded Nash had only a mild limitation in understanding, remembering, or applying information and a moderate limitation in concentrating, persisting, or maintaining pace.  (DN 9-2,

at PageID # 64-65.) She cited in support to Nash's hearing testimony that Nash "maintains a driver's license, drives locally, lives in a house with her son, fixes simple meals, uses a cell phone, and occasionally uses Facebook." (*Id.* at 64.) The ALJ also cited in support to treatment records suggesting Nash could receive instructions, complete a vocational assessment, and give appropriate effort to tasks presented. (*Id.* at 64-65.) Further, the ALJ noted that Nash graduated high school with a regular diploma, albeit with a "history of poor grades," and that there "[wa]s no evidence of special education placement." (*Id.* at 67.) The ALJ concluded that Nash's "reported work activities that she was able to engage in independently as well as her daily activities are consistent with a finding of no more than moderate functional imitations." (*Id.*)

Nash argued that significant contradictory evidence in the record cast doubt on the ALJ's conclusions. Nash stated that her low test scores on the examinations performed by William Allan Riley, Psy. D., ("Dr. Riley"); her local and national testing scores; and her report during a vocational assessment that she did receive "tutoring outside of class to address learning issues" devalue the importance of her graduation, upon which the ALJ relied heavily. (DN 13, at PageID # 1185; DN 9-6, at PageID # 432.) Nash noted that she testified to receiving assistance from her mother and her son's father with regard to her activities of daily living, that she can do little around the house, her mother does her grocery shopping, "she stopped going to the gym because of paranoia," and she does not do yard work. (DN 13, at PageID # 1185-86.) Nash argued that the ALJ's failure to resolve these contradictions in the record rendered her evaluation "cursory" and "inconsistent." (*Id.* at 1186.) However, elsewhere in her decision, the ALJ specifically noted that Nash testified to receiving help from her mother and son's father, including help "with laundry, groceries, and caring for her baby," indicating that she considered the same and still felt the

8

activities of daily living Nash did perform were sufficient to support the ALJ's findings. (DN 9-2, at PageID # 68.)

Ultimately, Nash does no more than point to evidence in the record that she believes supports a finding that she meets Listing 12.05. The question before the undersigned is whether the Commissioner's decision is supported by substantial evidence. *Gayheart*, 710 F.3d at 374; *Smith,* 893 F.2d at 108. If so, the undersigned may not even evaluate whether the record could support the opposite conclusion. Based on the undersigned's review of the record, the undersigned finds the ALJ's decision that Nash did not meet the Paragraph B(2) criteria of Listing 12.05 is supported by substantial evidence, as the ALJ cited to adequate evidence in the record to support her conclusion. Because a claimant must meet all criteria of a Listing in order to satisfy the same, the undersigned need not address Nash's arguments regarding the ALJ's decision on the Paragraph B(1) criteria.

Nash's citation to *Burbridge v. Comm'r of Soc. Sec.*, 572 Fed. App'x 412 (6th Cir. 2014) is unavailing.[2] In *Burbridge*, the Sixth Circuit reversed an ALJ's decision that had addressed the "material question" of whether Burbridge met Listing 12.05 in a single sentence with a citation to two exhibits. *Id.* at 415. The Sixth Circuit held that given the evidence in the record supporting a finding that Burbridge met certain requirements of Listing 12.05, "the ALJ was obliged to do more than simply cite the exhibit." *Id.* at 416. The instant case is distinguishable from *Burbridge*. The ALJ in the present case gave much more than a single sentence of analysis and discussed at length the evidence that supported her findings. Accordingly, the undersigned finds no error in the ALJ's conclusion that Nash did not satisfy Listing 12.05.

---

[2] Nash mistakenly stated that the case was styled "Forrest v. Com." but the reporter citation she provided thereafter is to *Burbridge*.

9

### 3. RFC Finding

Nash also challenged the ALJ's RFC finding as unsupported by substantial evidence. (DN 13, at PageID # 1186-90.) In doing so, Nash made several allegations of error, which the undersigned will separately address below.[3]

#### a) Combined Effects of Nash's Impairments

Nash argued that the ALJ failed to assess the combined effect of her physical and mental impairments in determining her RFC. (DN 13, at PageID # 1186.) An ALJ is required to consider the combined effect of a claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1523(c); 416.923(c) (2018). Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effect of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the claimant did not meet the Listings. *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988); *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). At Step Two, the ALJ found Nash had multiple severe impairments, including "status/post right hip open reduction and internal fixation, morbid obesity, depression, anxiety, history of attention deficit disorder, and mild intellectual disability." (DN 9-2, at PageID # 63.) At Step Three, the ALJ found that Nash "d[id] not have an impairment or *combination of impairments*" that satisfied any Listing. (*Id.* at 64 (emphasis added).) In determining Nash's RFC, the ALJ noted that her finding was based on a consideration of "all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical

---

[3] The undersigned will not address Nash's argument regarding the ALJ's "rejection" of her mother's testimony. (DN 13, at PageID # 1190.) Nash failed to provide a citation to the portion of the ALJ's decision that allegedly rejected her mother's testimony or a cite to the same in the Administrative Record. Despite a diligent search, the undersigned could locate neither and notes that the Commissioner did not address this argument. Accordingly, the undersigned concludes the inclusion of this argument was an error or oversight on the part of counsel and will not address the same.

10

evidence and other evidence," then went on to individually discuss Nash's severe physical impairments, severe mental impairments and own allegations regarding her symptoms." (*Id.* at 67-71.) The ALJ concluded that "*taken as a whole*, the record provide[d] limited support for the alleged severity of the claimant's symptoms." (*Id.* at 71.) As the ALJ discussed Nash's impairments individually and also, at the Third Step and in his RFC finding, specifically referred to a "combination of impairments" and her consideration of the record "as a whole," the undersigned concludes Nash's argument that the ALJ failed to assess the combined effect of her mental and physical impairments is without merit.

### b) Narrative Discussion Requirements

Nash also argued that the ALJ failed to comply with the narrative discussion requirements set forth in SSR 96-8p. SSR 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474 (July 2, 1996). SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34,478. It further states that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* As noted by the Commissioner, the ALJ provided five full-pages of narrative discussion regarding his RFC finding. (DN 20, at PageID # 1214; DN 9-2, at PageID # 67-72.) While quantity itself is not sufficient to satisfy SSR 96-8p, a closer examination of the ALJ's opinion indicates that the same comported with SSR 96-8p.

Regarding her physical limitations, the ALJ found that Nash had the RFC to perform light work but could not climb ladders, ropes, scaffolds, or stairs and could only occasionally stoop, crawl, crouch, kneel, and climb ramps. (DN 9-2, at PageID # 67.) The ALJ noted that Nash

11

testified she had pain in her right hip when standing and had a left knee meniscus tear that caused her pain when on her feet. (*Id.* at 68.) However, the ALJ found that Nash's subjective complaints were less persuasive than evidence in the record of "good joint alignment and healing, observations of intact right lower extremity strength and range of motion, normal gait without use of a cane, and the claimant's apparent ability to engage in activities such as going to the gym and driving." (*Id.*) The ALJ concluded that "the record fail[ed] to support a level of impairment as to preclude all work activity." (*Id.*) This analysis comports with SSR 96-8p's requirement that the ALJ explain how any inconsistencies in the case record were considered and resolved because it noted the evidence the ALJ relied upon in discounting Nash's subjective complaints.

Regarding her mental limitations, the ALJ found that Nash could "perform simple tasks that d[id] not require calculations," could interact with supervisors and coworkers but not the public; and could not be subject to strict production quotas or perform fast assembly line work. (*Id.* at 67.) The AFC also found that Nash could maintain concentration in two-hour segments and could "tolerate routine changes." (*Id.*) In support, the ALJ noted that Nash was "cooperative and friend during a psychological evaluation;" "indicated during her vocational assessment that she enjoys working with and around others;" and that despite her reported mental conditions, "records document[ed] intermittent, conservative treatment without any need for urgent, emergent, or inpatient treatments." (*Id.* at 71.) The ALJ also cited to the fact that despite her mild intellectual disability, Nash graduated with a general diploma, maintains a valid driver's license, has basic computer skills, and lives alone with her young son. (*Id.*) The ALJ recounted Nash's subjective claims regarding her own mental limitations, such as getting paranoid in public, having irrational thoughts, being "angry," and having a hard time getting along with others but concluded that Nash's "subjective complaints were less persuasive overall." (*Id.* at 67, 70.) Nash argued that the

12

ALJ failed to resolve inconsistencies between her RFC finding and Nash's test scores, "expert opinion that Nash is easily distracted and cannot focus on a sustained basis," and that the ALJ only partially described Nash's performance in her activities of daily living. (DN 13, at PageID # 1188.) The undersigned finds Nash's argument unavailing as elsewhere in her opinion, the ALJ recounted Nash's test scores, discussed Dr. Riley's opinion, and gave a full description of Nash's testimony regarding her activities of daily living and the assistance she received from others. (DN 9-2, at PageID # 65-66, 68.) Nash identifies no other inconsistencies that ALJ failed to resolve in her opinion. Accordingly, the undersigned finds that the ALJ's analysis comported with SSR 96-8p's requirements as the ALJ cited to the evidence relied upon in resolving any inconsistencies in the record.

As the undersigned has found that the ALJ comported with narrative discussion requirements in formulating Nash's RFC, the undersigned finds Nash has not demonstrated a reversible error regarding the same.

### c) Closed Period of Benefits

Nash also argued that the ALJ should have awarded a closed period of benefits based on Nash's hip injury during a motor vehicle accident. (DN 13, at PageID # 1187.) Disability benefits can be awarded for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). Therefore, "[a] claimant who meets the twelve-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time her disability commences until such time as the disability ceases." *Hall v. Colvin*, No. 15-181-DLB, 2017 WL 111926, at *2 (E.D. Ky. Jan. 11, 2017). While, here, the ALJ did not explicitly consider whether Nash was entitled to a closed period of benefits, adequate evidence in her decision supports a conclusion that such an award was not issued because Nash did not meet the durational requirement for the same. Nash was involved

in a motor vehicle accident in April 2013 that resulted in a hip fracture for which she had surgery on her right hip. (DN 9-2, at PageID # 68.) However, the ALJ noted that within two months after the accident and surgery, imaging showed her fracture had healed or nearly healed. (*Id.* at 69.) The ALJ stated that three months after the accident, Nash reported only intermittent, mild pain and that by six months after the accident, Nash "was doing well, able to ambulate without a cane at times, and despite having some stiffness and pain, did not report numbness or swelling." (*Id.*) Further, the ALJ cited medical records that stated that one year after the accident, Nash "was considered to be back to her normal pre-injury state." (*Id.*) Therefore, Nash's disability resulting from the accident did not last twelve months or longer as required. As the record and the ALJ's decision contain substantial evidence to support a decision to decline an award of a closed period of benefits related to Nash's hip injury, the undersigned finds no error in the ALJ's decision not to explicitly address the same.

### d) Dr. Riley

Nash also argued that the ALJ did not properly evaluate the opinion of Dr. Riley. (DN 13, at PageID # 1189-90.) In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a)(1) (2018). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 402.1502). Dr. Riley was an examining source, not

a treating source, because Dr. Riley assessed Nash in person on one occasion after a referral from a Vocational Rehabilitation Counselor. (DN 9-7, at PageID # 605, 607.)

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The ALJ did not completely discount Dr. Riley's opinion but noted that his opinion was entitled to limited weight because it was "not well supported by the record as a whole." (DN 9-2, at PageID # 72.) The ALJ noted that Dr. Riley's opined that Nash would have difficulty maintaining full-time employment but emphasized that Dr. Riley also found Nash to be "cooperative and friendly" and to "understand instructions and . . . give an appropriate level of effort to the tasks presented" during his evaluation. (*Id.*) Further, the ALJ noted that evidence in

15

the record such as Nash's ability to maintain a driver's license, drive, and care for her son were inconsistent with Dr. Riley's opinion. (*Id.*)

Nash argued that "[t]he ALJ's statement [wa]s not a thorough discussion and analysis of objective medical and other evidence." (DN 13, at PageID # 1190.) Nash stated that even if she was able to give effort and complete what was asked of her, the results of the testing performed by Dr. Riley demonstrated "the inability to continuously work." (*Id.* at 1189.) Nash also criticized the ALJ's emphasis on her ability to drive and live alone with her son, arguing that the same had nothing to do with sustaining continuous work activity, especially because of her testimony that she received help from her son's father and her mother in caring for him. (*Id.*) Nash cited to *Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003) in support of her argument that the ALJ failed to resolve these inconsistencies in assessing Dr. Riley's opinion. However, *Wright* did not address the ALJ's resolution of inconsistencies in the record and, therefore, does not support Nash's argument.

As previously referenced, the ALJ noted elsewhere in her RFC finding that Nash had reported needing assistance caring for her son. (DN 9-2, at PageID # 68.) This demonstrates that the ALJ was of aware of and considered that fact, yet still believed Nash's activities of daily living were inconsistent with the level of limitation Dr. Riley opined to in his report. A reviewing court's "role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony," only to determine whether substantial evidence supports the conclusion that the claimant is not disabled. *Wright*, 321 F.3d at 614-15. Unlike a reviewing court, it is the role of the ALJ to "resolve conflicts in the medical evidence," and in doing so, it was proper for the ALJ to consider Nash's activities of daily living. *Craft v. Comm'r of Soc. Sec.*, 39 Fed. App'x 274, 275-76 (6th Cir. 2002). Further, an ALJ is permitted to assign weight to an examining

16

physician's opinion with regard to the opinion's consistency with the record as a whole. *Ealy*, 594 F.3d at 514. Therefore, the undersigned finds that the ALJ's decision to assign only limited weight to Dr. Riley's opinion was consistent with the requirements of the applicable regulations and supported with substantial evidence.

### e) Esther Luttrell

Nash also argued that the ALJ erred in rejecting the conclusions of Esther Luttrell, MSW, a Workforce Development Specialist ("Luttrell"). (DN 13, at PageID # 1190.) The ALJ assigned Luttrell's opinion only partial weight. (DN 9-2, at PageID # 72.) The ALJ stated that it appeared that Luttrell's opinion was largely based on Nash's subjective complaints and was "not well supported by the objective evidence of record." (*Id.*) Luttrell's opinion is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(d) and 416.913(d), but an "other source." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2016). Therefore, the ALJ was not required to give it controlling weight. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)). Instead, the ALJ was required to consult Luttrell's opinion on "key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006) (rescinded as to all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[4] Nash argued that the ALJ erred in again referring to Nash's activities of daily living in discounting Luttrell's opinion, stating again that in her view, those activities "do not reflect on the ability to sustain continuous employment." (DN 13, at PageID # 1190.) However, as noted above, the ALJ gave Luttrell's opinion only partial weight because it appeared to be based on Nash's subjective complaints and "was not well

---

[4] As Nash's claim was filed on or before March 27, 2017, SSR 06-3p still applies to her claim.

17

supported by the objective evidence of record," not specifically because of Nash's activities of daily living, although those activities are subsumed in the reference to the evidence of record. (DN 9-2, at PageID # 72.) The undersigned already concluded above that it was proper for the ALJ to refer to Nash's activities of daily living in formulating her RFC determination and in considering the weight to assign to opinion evidence in the record. Nash made no other challenge to the ALJ's assessment of Luttrell's opinion. Therefore, the undersigned finds the ALJ's decision to assign partial weight to Luttrell's opinion was consistent with the applicable regulations and supported by substantial evidence.

        **f)**        **State Agency Physicians**

Nash also argued that the ALJ's assessment of the state agency physicians' opinions was improper, arguing that the ALJ failed to "deal with the record facts that would determine the ability to continuously sustain work." (DN 13, at PageID # 1189.) The ALJ assigned varied weight to the psychological and other assessments in the record, noting as to each what weight was assigned and for what reason. (DN 9-2, at PageID # 71.) Nash argued that the ALJ did not explain how state agency opinions were consistent with the "objective testing of the vocational rehabilitation psychological evaluation, especially those portions dealing with recall, distraction, and focus." (DN 13, at PageID # 1189.) This appears to be a reference to Dr. Riley's opinion though Nash did not provide a record cite to the same for clarity. The undersigned finds no error in the ALJ's failure to specifically reconcile Dr. Riley's opinion with the opinions of the state agency physicians as the ALJ otherwise considered Dr. Riley's opinion accordingly to the proper standards as set forth above. Further, Nash provided no authority requiring the ALJ to do so.

Nash also argued that the ALJ erred in failing to discuss how the state agency physicians' opinions were consistent with "the subsequent clinical findings noted by the ALJ," though the only

such finding she identified specifically was "the 2017 note of easy distraction." (DN 13, at PageID # 1189.) In recounting some of the evidence in the record, the ALJ had noted that that Nash's mid-2017 medical records noted that Nash was "easily-distracted." (DN 9-2, at PageID # 70; DN 9-8, at PageID # 1152.) While the ALJ highlighted the existence of this record, she found that after consideration of "the record associated with the severe mental impairments," Nash "could maintain attention and concentration for two-hour segments throughout an eight-hour workday." (DN 9-2, at PageID # 70.) Though Nash argued that the ALJ failed to deal with record facts regarding Nash's ability to work continuously, the ALJ's opinion clearly address contrary facts but came to the opposite conclusion of Nash. Indeed, the ALJ at least in part credited the records regarding distraction by incorporating a limitation regarding the time period for which Nash could maintain concentration in her RFC finding. For these reasons, the undersigned finds the ALJ's decision regarding the weight to be ascribed to the state agency physicians' opinions was consistent with the applicable regulations and supported by substantial evidence.

### III. RECOMMENDATION

For these reasons, the undersigned RECOMMENDS that the final decision of the Commissioner be **AFFIRMED**.

August 8, 2019

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).