ANGELICA NASH,                                                                    Plaintiff,

v.                                                         Civil Action No. 3:18-cv-258-DJH-CHL

COMMISSIONER OF SOCIAL SECURITY,                                Defendant.

* * * * *

## ORDER

Angelica Nash filed this action seeking review of the decision by the Commissioner of Social Security to deny Nash's application for disability-insurance benefits and supplemental social security income.  (Docket No. 1)  The case was referred to Magistrate Judge Colin H. Lindsay for report and recommendation.  (D.N. 11)  Judge Lindsay issued his Findings of Fact, Conclusions of Law, and Recommendation on August 8, 2019, recommending that the Commissioner's decision be affirmed.  (D.N. 21)  Nash timely objected to the report and recommendation.  (D.N. 22)  After careful consideration, the Court will adopt in full Judge Lindsay's Findings of Fact, Conclusions of Law, and Recommendation.

## I.

Nash protectively filed an application for child's insurance benefits based on disability, an application for disability-insurance benefits, and an application for supplemental security income on March 20, 2015.  (D.N. 9-5, PageID # 334-53)  On June 20, 2017, an administrative hearing was conducted regarding Nash's application.  (D.N. 9-2, PageID # 82-124)  On September 13, 2017, the ALJ issued an opinion denying Nash's claims.  (*Id.*, PageID # 57-74)  The ALJ found, among other things, that Nash had the residual functional capacity (RFC) to perform "light work" as defined in 20 C.F.R. §§ 404.1567(bb) and 416.967(b).  (*Id.*, PageID # 67)  She also found that

considering Nash's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Nash can perform. (*Id.*, PageID # 73) Finally, the ALJ found that Nash was not under a disability as defined in the Social Security Act from the amended alleged onset date through the date of the ALJ's decision. (*Id.*, PageID # 74) The appeals council denied Nash's request for review on February 28, 2018. (*Id.*, PageID # 39-41) Nash filed this action on April 24, 2018, challenging the Commissioner's denial of her application for disability-insurance benefits. (D.N. 1) The Court referred the matter to Magistrate Judge Colin H. Lindsay, who recommended that the Commissioner's decision be affirmed. (D.N. 21)

## II.

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report of specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Lindsay's recommendation to which Nash objects to determine whether relief is warranted.

In reviewing an ALJ's decision, the Court asks "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Roger v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted). The

Court "may not try the case *de novo*, or resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Where substantial evidence supports the ALJ's decision, the Court "must affirm." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 466 (6th Cir. 2017) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Moreover, "[t]he findings of the [ALJ] are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Comm'r of Soc. Sec.*, 246 F.3d 762, 772-73 (6th Cir. 2001); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

Nash argues that (1) the ALJ erred in failing to conclude that she met the requirements for Listing 12.05; (2) the ALJ did not properly evaluate the opinions of Dr. Riley and Esther Luttrell; and (3) the ALJ should have awarded a closed period of benefits. For the reasons detailed below, the Court finds Nash's arguments unpersuasive.

A.      **Five-Step Evaluation Process**

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920 (2018). Nash argues the ALJ erred in finding that Nash did not meet the requirements of Listing 12.05. (D.N. 22) Nash also asserts that the ALJ's RFC findings are unsupported by substantial evidence because the ALJ did not give proper weight to the opinions of Dr. Riley and Esther Luttrell. (*Id.*) The Court construes these arguments to mean that Nash objects to the ALJ's analysis under steps three and four of the five-step process.

### 1. **Step Three**

First, Nash argues that the ALJ erred in failing to conclude that she met the requirements for Listing 12.05. At step three of the evaluation process, an ALJ considers whether the claimant has an impairment that meets the criteria set forth in 20 C.F.R. Part 404, Subpart P., Appendix 1. 20 C.F.R. §§ 404.1520, 416.920. "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). The claimant bears the burden of proving her impairment satisfies all of the specified criteria in a given listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Nash now challenges the ALJ's discussion of whether her impairment meets or equals Paragraph B(2) of Listing 12.05. (D.N. 22, PageID # 1239) Paragraph B(2) requires

> significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> a. Understand, remember, or apply information (see 12.00E1); or
> b. Interact with others (see 12.00E2); or
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
> d. Adapt or manage oneself (see 12.00E4)[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05 (2017). In her written decision, the ALJ addressed whether Nash's impairments rendered Nash disabled under this listing, finding that Nash had only mild or moderate limitations with respect to the listed categories. (D.N. 9-2, PageID # 64-65) The ALJ concluded that Nash had only a mild limitation with regard to Paragraph B(2)(a), and a moderate limitation with regard to Paragraph B(2)(c). (*Id.*) In arguing that the ALJ erred by finding that Nash did not meet Listing 12.05, Nash did no more than point to evidence in the record that she believes supports a finding that she meets the listing. (D.N. 13) In her objection to Judge Lindsay's recommendations, Nash largely rehashes the same arguments already made in her Fact and Law Summary. (D.N 22) The Court agrees with Judge Lindsay that the evidence was duly

considered by the AL and that the ALJ cited adequate evidence in support of her conclusion and discussed at length the evidence that supported her findings. (D.N. 9-2)

In her decision, the ALJ noted that Nash "maintains a driver's license, drives locally, lives in a house with her son, fixes simple meals, uses a cell phone, and occasionally uses Facebook." (D.N. 9-2, PageID # 64) The ALJ also cited treatment records suggesting that Nash could receive instructions, complete a vocational assessment, and give appropriate effort to tasks as presented. (*Id.*, PageID # 64-65) In evaluating the evidence that Nash graduated from high school with a regular diploma, the ALJ noted that Nash had a "history of poor grades" but that there was also "no evidence of special education placement." (*Id.*, PageID # 67) In finding that Nash had no more than moderate functional limitations, the ALJ observed that Nash has an IQ score indicating significantly subaverage general intellectual functioning, but the ALJ weighed this against Nash's daily activities and the fact that Nash had reported work activities that she was able to engage in independently. (*Id.*)

As in her initial objection to the ALJ's findings, Nash argues that the ALJ did not give enough weight to the contradictory "objective evidence" of Nash's testing and grades. (D.N. 13, PageID # 1185; D.N. 22, PageID # 1240-41) Nash asserts that the ALJ did not address "how a person who tested in the first percentile with regard to perceptual reasoning, the ability to attend and encode material, visuospatial construction, distraction, attention, and psychomotor speed does not have a marked if not extreme problem." (D.N. 22, PageID # 1240) Nash also suggested that the ALJ failed to give adequate weight to the fact that she needs the assistance of two other people to care for her child, that "her Facebook use is limited," and that "she stopped going to the gym because of paranoia." (*Id.*, PageID # 1241) She further contends that the ALJ afforded too much

weight to the fact that Nash maintains a driver's license and lives with her son in light of her testing, grades, and the assistance she receives to care for her son. (*Id.*)

In her decision, the ALJ specifically mentioned that Nash testified to receiving help from her mother and son's father, indicating that she considered this evidence in making her decision. (D.N. 9-2, PageID # 68) Further, the ALJ explicitly considered Nash's medical record, including diagnoses of depression, anxiety, history of ADD, and mild intellectual disability, as well as Nash's subjective reports of depression, anxiety, and trouble with concentrating, comprehending, and focusing. (*Id.*, PageID # 70) The ALJ discussed other evidence such as psychological evaluations and the results of Nash's IQ test, which placed her in the mildly-impaired range overall. (*Id.*) But the ALJ also noted that Nash did not seek urgent, emergency, or inpatient psychiatric treatment and remained able to live alone and drive during the period under consideration. (*Id.*) The ALJ weighed this against other evidence in the record of Nash's ability to understand instructions, complete more than one assessment, give appropriate effort, live on her own with her young son, and drive. (*Id.*) The ALJ then found that Nash's subjective complaints were less persuasive overall, and that the record as a whole failed to support a level of impairment that would preclude all work activity. (*Id.*) The ALJ's decision contains extensive discussion of Nash's mental impairments before concluding that Nash could perform simple tasks that did not require calculations; that she should not be in a work environment with strict production quotas or fast assembly-line-type work; and that she could maintain attention and concentration for two-hour segments throughout an eight-hour workday, among other things. (*Id.*)

The Court's only duty at this juncture is to determine whether the ALJ's decision is supported by substantial evidence. *See Roger*, 486 F.3d at 241. Contrary to Nash's contention that the ALJ was required to provide a narrative explaining the weight given to certain pieces of

evidence, an ALJ is not obligated to list "every consideration that went into the step three determination" or "the weight [s]he gave each factor in [her] step three analysis." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). If the ALJ gave a sufficient explanation, her decision at step three must be affirmed so long as it is supported by substantial evidence. *Marlowe v. Colvin*, No. 12-201-DLB, 2014 U.S. Dist. LEXIS 40615, at *7 (E.D. Ky. Mar. 27, 2014) (citing *Her*, 203 F.3d at 389-90).

Because the evidence "could reasonably support" the ALJ's decision, the decision must stand. *Her*, 203 F.3d at 389-90. Even if Nash contends that the ALJ's discussion leaves something to be desired, "it is not insufficient to the point of inhibiting meaningful judicial review." *Rakes v. Colvin*, No. 14-321-GFVT, 2015 U.S. Dist. LEXIS 118868, at *17 (E.D. Ky. Sept. 8, 2015). In sum, the Court finds no error in the ALJ's conclusion that Nash did not satisfy Listing 12.05.

## 2. Step Four

Nash also challenges the ALJ's RFC findings as unsupported by substantial evidence. (D.N. 13, PageID # 1186-90; D.N. 22, PageID # 1242-44) At step four, the ALJ compares the claimant's RFC with the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(f). If a claimant can still perform her past relevant work, she will not be found disabled. *Id.*; 20 C.F.R. § 404.1560(b)(3). The claimant has the burden of proof at step four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Nash's objections identify two purported deficiencies with the ALJ's assessment; the Court will discuss each one in turn.

### a. Dr. W. Allan Riley

Nash argues that the ALJ did not properly evaluate the opinion of Dr. W. Allan Riley. (D.N. 22, PageID # 1242-43) In determining the claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical

sources. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a)(1) (2018). "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'non-examining source'), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source')." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Opinions from nontreating sources are never given controlling weight; instead, these opinions are weighed based on the "examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id.* (citing 20 C.F.R. § 404.1527(c)). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. 404.1527(c).

Dr. Riley is a nontreating source. *See Gayheart*, 710 F.3d at 375. He examined Nash in person on one occasion after a referral from a Vocational Rehabilitation Counselor. (D.N. 9-7, PageID # 605, 607) Thus, Dr. Riley's opinion was not entitled to controlling weight, and in order to determine how much weight to give Dr. Riley's opinion, the ALJ was required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. 404.1527(d)). With regard to examining-but-nontreating sources such as Dr. Riley, the ALJ must say enough "to allow the appellate court to trace the path of h[er] reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Nash objects to the lack of weight given to Dr. Riley's findings. (D.N. 22, PageID # 1242-43) She argues that the findings of Dr. Riley are uncontradicted and consistent with her own testimony, and that the ALJ considered "anecdotal evidence as opposed to empirical evidence as substantial." (*Id.*, PageID # 1243) The ALJ explicitly discussed her consideration of Dr. Riley's psychological evaluation. (D.N. 9-2, PageID # 72) She noted that although Dr. Riley opined that Nash would "likely continue to experience difficulty in maintaining full-time competitive employment," he also indicated that Nash was "cooperative and friendly, reported a history of regular classes and living by herself, and that she appeared to understand the instructions and seemed to give an appropriate effort to the task presented." (*Id.*) The ALJ did not completely discount Dr. Riley's opinion, but explained that it was entitled to limited weight because it was not consistent with the record as a whole, given Nash's ability to "maintain a valid driver's license, drive, and care for her young son." (*Id.*) As mentioned above, the ALJ discussed elsewhere in her RFC findings that Nash had reported needing assistance caring for her son. (*Id.*, PageID # 68) This shows that the ALJ considered that fact as part of her analysis but found that Nash's activities of daily living were inconsistent with the limitation opined by Dr. Riley.

The ALJ also took into consideration Nash's subjective testimony. (*Id.*, PageID at 71) She noted that Nash reported difficulty with counting money, math, and understanding things, and that she described herself as paranoid, that she "can get angry," and that she sometimes has a hard time getting along with others. (*Id.*) The ALJ found that despite these allegations, Nash was cooperative and friendly during a psychological evaluation and vocational assessment, and she apparently indicated during her vocational assessment that she enjoys working with and around others. (*Id.*) With regard to Nash's reports of depression and anxiety, the ALJ explained that records showed intermittent, conservative treatment without any need for urgent, emergent, or

9

inpatient treatment.  (*Id.*)  Finally, although Nash's intelligence testing was consistent with a mild disability, the ALJ again observed that Nash graduated with a general diploma, denied a history of special education, maintained a valid driver's license and basic computer-use skills, and lives alone with her young son.  (*Id.*)  The ALJ thus found that as a whole, the record provided limited support for the alleged severity of Nash's symptoms.  (*Id.*)

Nash also contends that the ALJ did not point to "specific clinical and laboratory test record evidence that contradicted Dr. Riley's clinical evaluation."  (D.N. 22, PageID # 1243)  Unlike a reviewing court, the ALJ must "resolve conflicts in the medical evidence."  *Craft v. Comm'r of Soc. Sec.*, 39 F. App'x 274, 275-76 (6th Cir. 2002).  In addition to Nash's activities of daily living, the ALJ considered the opinions of non-examining sources, the state agency medical physicians and psychologists.  (D.N. 9-2, PageID # 71)  The ALJ noted that although these consultants were non-examining, their opinions deserved some weight.  (*Id.*)  The ALJ explained that she afforded great weight to the psychological assessments as they were consistent with finding no greater than mild to moderate functional limitations and were supported by the entirety of the record, including outpatient mental-health-treatment notes, primary-care-provider records, and the 2015 psychological evaluation documenting Nash's ability to understand instructions and give appropriate effort.  (*Id.*)  The ALJ carefully assigned weight to this evidence, even noting that she assigned less weight to one state-agency medical assessment because it did not appear to account for Nash's history of right-hip fracture and surgery and the potential adverse effects of her obesity.  (*Id.*)  The ALJ also noted that the record contained a Global Assessment Functioning score, but she explained that GAF scores do not provide a reliable longitudinal picture of mental functioning for disability analysis and that the evaluators did not explain the reasons behind Nash's GAF score.

(*Id.*, PageID # 72)  The ALJ therefore assigned minimal weight to the GAF score in the record. (*Id.*)

An ALJ is permitted to assign weight to an examining physician's opinion based on the opinion's consistency with the record as a whole.  *Ealy*, 594 F.3d at 514.  Because Dr. Riley's opinion was inconsistent with other objective evidence in the record, as well as Nash's activities of daily living, the ALJ's disagreement with Dr. Riley's conclusion was not error.  *See Craft*, 39 F. App'x at 276.  In sum, the ALJ's decision gave sufficient explanation to allow the Court to trace the path of her reasoning.  *Cf. Stacey*, 415 F. App'x at 520 (noting that the court could not tell "whether the ALJ rejected [the examining source's] opinion for legitimate or illegitimate reasons or whether he failed to consider it at all in assessing [claimant's] residual functional capacity."). Accordingly, the Court finds that the ALJ's decision to assign only limited weight to Dr. Riley's opinion was consistent with the requirements of the applicable regulations and supported by substantial evidence.

### b.  Esther Luttrell

Nash also argues that the ALJ erred in rejecting the conclusions of Esther Luttrell, MSW, a workforce-development specialist.  (D.N. 13, PageID # 1190; D.N. 22, PageID # 1243-44) Specifically, Nash objects to the ALJ's determination that Luttrell's opinion was only partially acceptable because it was based on Nash's subjective complaints.  (D.N. 22, PageID # 1243)  Nash argues that Luttrell gave her objective tests as well as a clinical interview, and that Luttrell's notes were consistent with Nash's testimony and a referred psychologist's conclusion.  (*Id.*, PageID # 1244)  Lastly, Nash argues that there was no evidence that Luttrell relied solely on Nash's subjective statements or that subjective statements are not a valid part of a clinical evaluation.  (*Id.*)

In addition to acceptable medical sources, a claimant may also present evidence from "other sources." *Engbrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)). "Other sources include, but are not limited to . . . nurse practitioners, physicians' assistants, . . . [and] therapists . . . ." 20 C.F. R. § 404.1513(d). An ALJ must consider "other-source" opinions and "generally should explain the weight given to opinions for these 'other sources.'" *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citing SSR No. 06-03p, 2006 SSR LEXIS 5, at *6 (Jan. 1, 2006)). "But other-source opinions are not entitled to any special deference." *Id.* Luttrell's opinion was not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(d) and 416.913(d), but rather an "other source." As such, her opinion was not entitled to controlling weight, and the ALJ was not required "to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources." *Engbrecht*, 572 F. App'x at 399.

Here, however, the ALJ explained why she did not assign Luttrell's opinion controlling weight, stating that she did so because it appeared that many of the findings were based upon Nash's subjective reports, and that Luttrell's opinion was not supported by the objective record of evidence, which the Court described in detail above. (D.N. 9-2, PageID # 72) Thus, the ALJ properly considered Luttrell's "other-source" opinion and explained her reasons for giving it partial weight. *See Hill*, 560 F. App'x at 550. The ALJ's decision regarding Luttrell's opinion was therefore consistent with the applicable regulations and supported by substantial evidence.

**B.      Closed Period of Benefits**

Nash also argues that the ALJ should have awarded a closed period of benefits based on Nash's hip injury from a motor-vehicle accident. (D.N. 13, PageID # 1187; D.N. 22, PageID # 1241) Specifically, Nash argues that the ALJ failed to consider that she is "not able to return to

work." (D.N. 22, PageID # 1242) Nash asserts that she has a limp on the right with a Trendelenburg gait, that she was referred for more physical therapy, and that there has been no release from treatment.[1] (*Id.*) She also contends that there is no evidence that there was a vocationally significant improvement during a twelve-month period, and that 20 C.F.R. § 404.1594(a) requires a showing of improvement and that the improvement was related to the ability to work. (*Id.*)

Disability benefits can be awarded for a closed period. *Myers v. Richardson*, 471 F.3d 1265, 1267 (6th Cir. 1972). "A claimant is entitled to a closed period of disability if the disabling effect of his impairments 'lasted or [were] expected to last for a continuous period of at least 12 months.'" *Haney v. Astrue*, No. 5:07CV-188-J, 2009 U.S. Dist. LEXIS 128179, *8 (W.D. Ky. Feb. 2, 2009) (quoting 20 C.F.R. §§ 404.1509 and 416.909). Therefore, a "claimant who meets the twelve-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time her disability commences until such time as the disability ceases." *Hall v. Colvin*, No. 15-181-DLB, 2017 U.S. Dist. LEXIS 4042, at *6 (E.D. Ky. Jan. 11, 2017) (citing *Howse v. Heckler*, 782 F.3d 626 (6th Cir. 1986)).

The ALJ did not explicitly consider whether Nash was entitled to a closed period of benefits, but adequate evidence in her decision supports a conclusion that such an award was not issued because Nash did not meet the durational requirements. The ALJ considered the record as a whole. Nash was involved in a motor-vehicle accident in April 2013 that resulted in a hip fracture for which she had surgery on her right hip. (D.N. 9-2, PageID # 68) The ALJ noted that within

---

[1] "Trendelenburg gait is defined as an abnormal, leaning gait occasioned by weakness in one lower extremity." *Tosinski v. Comm'r of Soc. Sec.*, No. 1:17 CV 198, 2018 U.S. Dist. LEXIS 49507, at *5 n. 1 (N.D. Ohio Mar. 26, 2018) (quoting *Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 741 (S.D. Ohio 2013)).

two months after the accident and surgery, imaging showed that Nash's fracture had healed or nearly healed. (*Id.*, PageID # 69) Three months after the accident, Nash reported only intermittent, mild pain, and by six months after the accident, Nash was "doing well, able to ambulate without a cane at times, and despite having some stiffness and pain, did not report numbness or swelling." (*Id.*) The ALJ also cited medical records stating that one year after the accident, Nash was "considered to be back to her normal pre-injury state." (*Id.*)

Contrary to Nash's assertions, there is no requirement that the ALJ use any specific language or make specific findings relating to a claimed closed period of disability. *See, e.g.*, *Dutkiewicz v. Comm'r of Soc. Sec.*, No. 1:15-cv-163, 2015 U.S. Dist. LEXIS 166749, at *14 (W.D. Mich. Dec. 14, 2015) (holding that although the ALJ's decision did not contain a specific finding stating that he considered a closed period of disability, the ALJ had considered the record as a whole, which necessarily showed that he found the plaintiff did not demonstrate a closed period of disability); *Evers v. Astrue*, No. 3:12-CV-118, 2013 U.S. Dist. LEXIS 49416, at *32 (E.D. Tenn. Jan. 2, 2013) (finding that the ALJ did not err by only implicitly addressing a closed period of disability); *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10CV1571, 2012 U.S. Dist. LEXIS 21079, at *1 (N.D. Ohio Feb. 21, 2012) (finding no law exists requiring an ALJ to specifically indicate that a closed period of disability was considered and rejected).

Here, the ALJ discussed the record as a whole, and the evidence showed that Nash's disability from her accident did not last twelve months or longer. This necessarily shows that the ALJ found that Nash did not demonstrate a closed period of disability. *See Dutkiewicz*, 2015 U.S. Dist. LEXIS 166749, at *14. Thus, Nash was not entitled to a closed period of benefits.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)　　The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge Colin H. Lindsay (D.N. 21) are **ADOPTED** in full and **INCORPORATED** by reference herein.

(2)　　A separate judgment will be entered this date.

September 30, 2019

**David J. Hale, Judge**
**United States District Court**